Good morning. May it please the Court, Jonathan Libby appearing on behalf of the Appellant Marcos Mejia-Munoz. And I'd ask to reserve two minutes for rebuttal, okay? Your Honors, we raise two sentencing issues in this appeal. The first issue, we argue that remand is necessary because it is unclear whether a downward departure was denied on legal or factual grounds, the departure being disparate treatment in pre-sentence confinement conditions. That is to say, your argument is not clear that the judge recognized that he had discretion? That's correct, Your Honor. I'm reading from page 72 of the excerpt. The judge says, and while recognizing the Court's discretion to depart downward, I'm not inclined to accept any of those grounds. Correct. What do I deal with that – do with that? Well, here, though, in the usual situation, the authority of the Court's not generally in doubt. Here, the probation officer, in fact, had advised the Court that this was not a lawful ground for departure. That, in fact, the only way this could potentially be a ground for departure would be if it constituted cruel and unusual punishment under the Eighth Amendment, which, in fact, was – is not the case. The Court certainly had the discretion. And because the Court did not indicate that it was aware that it had the discretion when – specifically with respect to this condition, rather than broadly indicating that it recognized its general discretion, it's unclear whether or not it recognized its discretion with respect to this departure ground. Now – Where does the Court say it is unclear about whether it had discretion? Where in the record? It does not say anywhere in the record that the Court felt it – whether Judge Phillips certainly did not indicate that she believed it was unclear. The Court simply gave boilerplate language, I recognize my discretion, and I choose not to exercise my discretion. Why do you say it's boilerplate? It's the standard language that the – that judges generally use when they are considering departure requests. Again, generally, departure requests are not – there's no question whether departure ground is a lawful ground for departure. Here, the Court was specifically advised that it did not have the authority to grant a departure on the ground of pre-sentence confinement conditions. So when the Court – but the Court did have – there was no question the Court had discretion with respect to the other grounds that had been raised. And so because the Court gave no indication that it was specifically aware, contrary to the advice it had received from the probation officer, that it had discretion with respect to this particular ground for departure, we believe that – So in order to satisfy the test do you think we should apply here, the judge had to respond specifically to that ground and say, I disagree with the recommendation, and I have discretion on this ground also, and I nonetheless refuse to exercise it. That's correct. Where – it was in dispute whether or not there – it was a boilerplate ground. What's your best case for that proposition? Well, in Garcia-Garcia, which was a nice case. The Court said nothing. The Court said nothing. And what this Court said in that case was the Court does not have to say anything specifically with respect to its authority, only when its authority is not otherwise in dispute. Here, its authority, in fact, was in dispute with respect to the particular grounds that we've cited. But then wasn't the Court's refusal to depart downward a rejection of the probation officer's suggestion? I – it certainly was, but I'm not sure that we can read into the – well, it's not clear that the Court, in fact, considered that advice and rejected it. I – certainly the Court didn't grant departure. If the Court listens to departure arguments from the counsel and says nothing and pronounced a sentence, we assume that the Court listened to counsel and made the departure decision and went on. So why is that different here? It was in the file. The probation officer says no authority. The Court says no departure. Why isn't that the end of the story? Because, in fact, the probation officer, which acted as an arm of the Court, the parties had not argued that it was not a legally permissible ground. Well, why is that – why is that better? And if the parties argued it and the Court said nothing, we don't worry about it. Why is it better if the probation officer says something and the Court says nothing? Why is that better for the defendant? Because it's unclear that the Court, in fact, rejected – considered and rejected the probation officer's advice because the Court was silent on this ground. But it was clear that the Court had been advised that it did not have the authority to grant a departure on this particular ground, which is why we argue that it has the responsibility to say, specifically with respect to this ground, I am aware, notwithstanding the advice I've received from the probation officer. Let's try another tack at this one. Now, in light of Booker and Fanfan, these guidelines are no longer binding on the Court. They're merely – I don't know what even the right word is, maybe advisory. And we judge what the district judge has done now on our – some sense of reasonableness. We recently had argued to us on Bonk the Ameline case, and that has not yet come down. Do you have any argument based upon Booker and Fanfan as to a remand to allow resentencing? That is to say, even if you lose on the ground of which you're now pursuing, that is to say, assuming the binding character of the guidelines, is it possible that the judge might have come to a different decision if the judge had known that the guidelines were merely advisory? I believe the answer is yes. You certainly could have come to a different decision. The sense imposed on this case was at the low end of the guideline range. It's certainly not clear that the Court considered all of the mitigating factors that it could have considered under 3553A, because there was no basis for the Court to consider them at that time. Okay. So at least that argument's in front of us. That's correct. And I did file a 28J letter with the Court yesterday, where, in fact, I argue that, in fact, Booker does control and that this case should be I understand the practice of lawyers. You prepare for the argument, you write the 28J letter, and you're doing it all within the next day or so because you want to have it fresh. 28J letters that were submitted to the Court yesterday rarely arrive to us today. I don't recognize that. Now, you wanted to save two minutes. Do you want to talk briefly about the conditions of probation in the Fifth Amendment argument and ripeness? Yes, Your Honor. The condition was that Mr. Mahamunia's report for instructions to his probation officer within 72 hours should he reenter the United States after being deported. It's our position that this condition was plainly improper since it compels Mr. Mahamunia to incriminate himself in violation of the Fifth Amendment without immunizing him from press prosecution. Now, the government's argued that we've waived this argument. We filed supplemental briefing on that matter. I don't believe the claim was waived. This was not an intentional relinquishment of a known right. It was forfeited. There was no objection, clearly, but it clearly can be reviewed by this court for plain error, and the government cites a few cases in which this court has said it's waiver. I believe those cases were wrongly decided, and if you trace them back to the source, it's a case that was decided before Alano by the Supreme Court and before Perez by this ombudsman, and so now it's in those cases, Alano-Perez, it's now pretty clear that there's a difference between forfeited error and waiver. Let's assume that the error was not forfeited. What about ripeness? In other words, this seems to me to be clearly a hypothetical case, which is at the heart of a ripeness analysis, because there's a whole bunch of things that have to do with this man's life. According to the judgment, he's required to not enter the United States illegally if deported. Within 72 hours, he should report to the probation office. He has, during the period of supervised release, there's three years of supervised release imposed. So then you've got a must reenter, reenter illegally within three years of deportation, not report to the probation officer, be apprehended, and then have the failure to report somehow get visited adversely upon him. Why did he have to? He does not have to be apprehended under the condition he's given a choice. Well, I said assume that he did not report to the probation office, which it seems to me would follow. If he reenters illegally, is he going to truck down to the probation office the first thing and say hello? I don't think so. That's the condition, and that's the condition we're challenging. One of the conditions is that he not reenter illegally. He's already violated that one on my hypothesis. That's true. So all these things have to happen, and then he's standing either in front of the probation office or he's standing in front of the judge, and something has to happen to violate his rights. What happens then to violate his rights? Well, I mean, we're challenging the condition itself, which by its terms- Well, let's assume that's not right. I mean, to me, that's hypothetical. But let's assume he's now back in the United States. He's been apprehended. He's in court. What has to happen for the Fifth Amendment to kick in? Well, if he's been apprehended, then the condition doesn't really-the condition we're challenging isn't relevant because he'd already been apprehended. So there's not a- But doesn't he have to suffer some adverse consequences? Would it be if that's used as a part of the supervised release violation? Would that be the problem? Well, the problem is with the condition itself that requires him-essentially gives him this option of choice of he either reports or does report and violates or he has to-you know, he violates the condition and gives up his Fifth Amendment rights. Well, let's assume that he comes back in, doesn't report, is apprehended, charged with supervised release, and his failure to report is never mentioned by anybody. What's the problem? Well, then there's no problem. Okay. So in that case, the hypothetical never came to be. That's correct. So let's assume that instead of being charged with a supervised release violation, let's assume that he's charged with felonious reentry. And then he's standing in front of the judge for sentencing. Then does the-then does the provision kick in? Would that be a problem? No. Again, that would be-the problem, of course, is if he is-the Fifth Amendment problem is the requirement that he, in fact, report, which is compelling him to communicate that he has violated the law. But until he actually communicates, he hasn't-he hasn't given up anything, has he? That's right. But the condition on its face requires him to give up his Fifth Amendment rights if he complies with the condition. And the-and-and- But if he doesn't, my point is if he doesn't, he may suffer no consequences at all. That's true. All right. So doesn't that make it hypothetical, so you know whether or not there's a consequence? Well, except that this is a final judgment. This is part of the-the condition of supervised release is part of the sentence, which is now a final judgment, that is appealable to this Court. This is the only time he has the opportunity to challenge the condition that compels him. What about on my example about a supervised release violation? He's in front of the judge on a supervised release violation. And the judge says, one of the violations here is that you didn't report to the probation officer. And he says, that's an illegal provision, Your Honor. You can't use that. And that would not be a violation of the Fifth Amendment. That's right. But doesn't-doesn't that give him everything he needs in order to protect his Fifth Amendment rights when he can argue to the judge at supervised release violation time that, look, you can't take this into account? Well, he could certainly argue that for purposes of the violation. But if he complies with the-the condition that we're challenging, then he, in fact, would be giving up his Fifth Amendment rights if he complies with the condition. And that's the problem with the condition. And that's so hypothetical, it's hardly worth talking about. Well, it's not hypothetical, Your Honor, because he's given the – if, in fact, he does come back to this country, he has to comply with the condition. Illegally, illegally. He has to comply with the condition. Right. But one of the conditions is that he not reenter illegally. So he's already violated supervised release by just being here. That's true. And that would be a potential violation of supervised release. This would be – this is an additional violation of supervised release. Or if he does comply with the condition, then, in fact, he is being required to give up his Fifth Amendment right not to incriminate himself. And-and this is the only opportunity he has. No, it's – no, it's not – Judge Nelson already gave you this. It's not the only opportunity. That is to say, if he, in fact, is being brought in for violation of supervised release, he can then challenge it. That's not the only – so it's not the only. He can challenge the results. He cannot challenge the condition itself. Why can't he? That is to say, if he is being charged with violation of supervised release because upon his illegal reentry he did not report within 72 hours, why can't he say that is an unconstitutional condition and is not enforceable against me? Why can't he say that? That was Judge Nelson's question to you. You know, all I can do is, again, repeat what I've been saying. He – he is being given a choice. Well, I understand that. But that wasn't the answer because I think he can raise it. Now, he may or may not win, but he can raise it. I don't think he's foreclosed from asserting that as a defense to saying that's an unconstitutional condition, Your Honor. Well, he's being given a choice whether or not to comply or not. I understand – I understand that, too. Okay. Why don't we hear from the other side? And we've taken you over, but we'll give you a minute in rebuttal. Thank you, Your Honor. May it please the Court? Sean Loki, representing Appalachia, United States of America. As counsel said, there are essentially two issues in front of this Court. The first is the – whether this Court has jurisdiction to consider the district court's downward departure – denial of a downward departure. The government's position is that the district court exercises its discretion. Now, as the Court pointed to the record at page 72, where the Court mentions it, the Court mentions it actually twice. The Court mentions it initially and then again. The government's position is that there really is no – does not exercise its discretion. I'd like to emphasize that it – neither party disputed whether the Court had discretion in their briefs. The Court addressed the facts of the argument, and the government argued, indeed, the defendant had submitted no facts and evidence. The Court would not do that, at least the inference is, unless it believed it at least had the power to depart. With regard to the statement in the addendum to the PSR, with regard to cruel and unusual punishment, I think, first of all, that that fairly can be considered. I'm not clearly telling the Court it does not have the discretion to depart. The way that it's phrased is, barring a finding by this Court, the use of San Bernardino Jail is the unconstitutional imposition of a cruel and unusual punishment. A probation officer can see no grounds for a departure based on the harsher conditions of this jail. I think that could fairly be read as defendant actually not having met the burden under a factual scenario. But even if the Court were to consider that explicit advice that the Court didn't have, the district court didn't have the authority to depart downward, the Court nowhere mentions it. They only mention the addendum to the PSR. The only thing the defendant or appellant points to is right at the beginning where the Court says that it has read that. Does not discuss this. I think the Pinto case that the government cites goes a long way towards settling this issue. The Court says in there, we've held decisions that an I-Downward departure be considered discretionary unless the district court indicates that its refusal to depart rests on its view that it could not, as a matter of law, do so. That is clearly not the case with what Judge Phillips did here. Now, as to the Fifth Amendment claim, what the government is essentially saying, well, let me address the Booker point first. I received a 2018 letter yesterday. It was faxed to my office on Friday, a defendant raising this issue. I want to point out for the Court, the defendant was sentenced on April 26th of 2004 before Blakely in June of 2004, certainly before Booker in January of this year. Did not raise this claim below, so it would be a plain error analysis. This Court has heard Ameline, second one, on Bonk, and has not issued a decision. Then I, therefore, I think the standard as to where we're going on that claim is certainly not yet clear. We don't think it's properly before the Court, but if it is, it's a plain error case. We don't think the Court should consider it until a decision comes down in Ameline to, with regard to what the proper analysis is on the third and fourth prong. Now, if the Court, it certainly wasn't briefed by either parties. It is mentioned in the 2018 letter. The Court is going to reach that issue. The government would point out, as to the third and fourth prongs of the plain error analysis, assuming there is an error, assuming it's plain. We don't believe that this affects defendant's substantial rights, because we don't think the defendant, certainly has not, but could not show the outcome would be any different. Defendant, appellant, appellant's counsel said that he thinks that there is something in the record that the judge would have ruled differently had the guidelines not been binding. Well, Judge Phillips denied three downward departure requests on a variety of issues. Cultural assimilation, family circumstance and history, and then the disparate conditions, and also sentenced the defendant to low end, and also considered those singly or in combination, also denied downward departure requests. I think based on that, that to show the outcome would be any different, would be a, well, certainly something the defendant has not done, it would be a hard burden to show. Now, as to the Fifth Amendment claim, what the government is essentially saying, and the court asked for supplemental briefing on this, ripeness, waiver or forfeiture, what we are essentially saying is this is not the time to consider this case now, and how it should come up is in a future proceeding, either a supervised release revocation proceeding, if the multiple contingencies happen, or in a future 1326 case. With regard to the forfeiture analysis, under that, we don't think the defendant meets the second, third or fourth prong. We don't think that the error in this case is plain, obvious or clear. We don't think that it is in contravention to long-standing legal principles of this court. So it's not plain. We also don't think that it affects the defendant's substantial rights. The outcome of this proceeding, with or without the condition, I don't believe would be any different. He would still be on supervised release for three years. Now, one of the, what appears to the government as a, perhaps an odd side effect of ruling a defendant's claim and approving it, would seem to be that aliens found in this country who are convicted and then placed on supervised release, essentially couldn't be on supervised release because the simple act of supervising them would be violating their Fifth Amendment rights. Well, or they can't be on supervised release unless you supervise them outside the country because they're not entitled to be in the country and you deport them. So why do you want supervised release when under conditions of what they've done, they're not entitled to be here, you don't want to supervise them in Mexico, or do you? No, Your Honor, the government does not. Well, then why are you even after supervised release? Well, I would say that there is a possibility that this defendant could come back into this country. Legally? Yes, Your Honor. Within the three years? Well, I don't know about the timing, but I would not say that that is impossible. Well, if that's so, why don't you specify in the order, in the event that this defendant comes back in the country legally within three years, here are the conditions of supervised release. Why don't you say it, why don't you write it that way? I mean, assume it's your office that wrote this, right? Wrote the order in this? Assume it's your office that, I mean, I should say it this way, has control over how the conditions of supervised release will be drafted. Is that right? What I know is that this is a standard condition of supervised release in the central district. I do not know whether the office has control over it or not. I would not doubt that we certainly have some input. If the U.S. Attorney doesn't have control over this, it's a pretty poor U.S. Attorney's office. But why we do not draft it that way, I'm not familiar with, other than we do not believe as it is drafted it would be a Fifth Amendment violation. Do you think it's not a Fifth Amendment violation to require someone to come in and say, by his very presence, I am now admitting to you that I have committed a crime? Yes, I do not think that is a Fifth Amendment violation. And why do you think that's not a Fifth Amendment violation? I don't believe that his presence is testimonial under the Fifth Amendment case law. I don't think it's any gambling violation. What about the gambling registration cases in the Supreme Court? I'm sorry, Your Honor? What about the gambling registration cases in the Supreme Court, where the Supreme Court has held that to require someone to register and pay a tax for illegal gambling is a violation of the Fifth Amendment? Yes, Your Honor, I believe the ---- Are you familiar with those cases? I know they're not in the briefs from either side. I am not familiar with those cases. I believe there's a cite to one of them briefly in Murphy with regard to this case, with regard to that. And I believe the court there in Murphy still upheld requiring the defendant in a probation context to report. I would also point out that this is not a gambler would presumably be out and not on some sort of probation or supervised release. And the cases where the court looks at a violation of a constitutional right where a person is on probation or supervised release, for instance, the violations of First Amendment rights of association, motorcycle violence, some of the cases we cited in our brief, I think that in those cases the court has upheld those conditions and balanced any, I'm saying in those cases, where liberty interests. Just to make it as plain as I can make it, as I view this, if he comes back in this country illegally and is within a three-year period and he complies with the condition of supervised release that he report, his very act of reporting tells the person to whom he is reporting that he has committed a crime. And he's required to do that. If he doesn't come in, nobody knows he's committed a crime unless they catch him otherwise. If he does come in in compliance with the requirement, his very act of appearing says, I have committed a crime. Isn't that right? I think it would be incriminating, assuming that he did commit a crime. Well, the crime is he's here. That's right. There you go. I think it would be. I'm not saying it would be wholly incriminating. I'm saying it would not necessarily be incriminating. Well, it would not necessarily be incriminating if he had some legal ground to be here. But I have trouble stretching even my hypothetical mind around finding why in the next three years it will be legal for him to be here. I could give you one hypothetical example of a case where this could happen. It's certainly not part of the record or anything, but there are cases where a visa could be issued, an SP-1 visa, based on the defendant's cooperation with the government. Okay. But you don't want to redraft your order to say this reporting requirement applies only if he's in the country legally? No. I didn't think so. I have nothing further. Thank you. Thanks very much. We'll give you a minute if you'd like. Thank you, Your Honor. Just with respect to Booker, the court was considering the various downward departure requests under the restraints of the sentencing guidelines. The downward departures for cultural assimilation, family circumstances, could only be granted if, in fact, the circumstances were extraordinary. That's no longer the case post-Booker. So it's certainly not clear that the district court would have, in fact, done exactly the same thing. One thing the court did indicate was one of the reasons it was not going to grant the departure was because of the nature of the felony conviction that Mr. Mejia had. Now, it's not clear whether or not she was basing that on the requirements under the guidelines that a departure can only be granted under very limited circumstances based on the nature of the underlying conviction. Now, post-Booker, she's free to consider any of these points. Are you disagreeing with the government's suggestion that we simply wait for Ameline? No, I don't. Certainly, this Court should wait for Ameline. I'd certainly encourage the Court to follow the First, Second, and Third Circuit approach, which is these should just be remanded and allow the district court to make these determinations. I'm afraid that's above our pay grade. That's in the hands of the unbound court. Okay. Thanks very much. Thank both sides for their argument in this case. The United States v. Mejia Munoz is now submitted for decision. The next case on the argument calendar is...
judges: T.G. Nelson, W. Fletcher, Bea